```
            IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| JOSE LOPEZ, | HON. JEROME B. SIMANDLE |
| Plaintiff, | Civil No. 04-2155 (JBS) |
| v. | |
| CORRECTIONAL MEDICAL SERVICES, INC., et al., | **OPINION** |
| Defendants. | |

APPEARANCES:

Gregg L. Zeff, Esq.
FROST & ZEFF, ESQS.
430 Route 70 West
Cherry Hill, NJ 08002
    Attorney for Plaintiff

Kerri E. Chewning, Esq.
ARCHER & GREINER, PC
One Centennial Square
P.O. Box 3000
Haddonfield, NJ 08033
    Attorney for Defendants Correctional Medical Services, Inc.,
    William Andrade, James J. Neal, James Ruman, Rock Welch and
    Abu Ahsan

Franklin Lewis Flacks, Esq.
ROTTKAMP & FLACKS, ESQS.
795 Parkway Avenue
Suite A-6, Lexington Mews
Trenton, NJ 08618
    Attorney for Defendant St. Francis Medical Center

**SIMANDLE**, U.S. District Judge:

    Plaintiff brought this action for damages and injunctive relief under 42 U.S.C. §§ 1983 and 1988, 42 U.S.C. § 1231 et seq., as well as New Jersey common law, alleging that Defendants knowingly exposed Plaintiff to the Hepatitis B and C Viruses and,

once Plaintiff contracted those diseases, failed to advise him of the fact of his own disease and were deliberately indifferent to his serious medical condition.

Defendants Correctional Medical Services, Inc., William Andrade, James J. Neal, James Ruman, Rock Welch and Abu Ahsan (collectively "CMS Defendants") have moved for partial summary judgment, arguing that Plaintiff's failure to submit an affidavit of merit pursuant to N.J.S.A. 2A:53A-27 is fatal to his common law claims for negligence, medical malpractice, emotional distress and fraud.  St. Francis Medical Center has moved to dismiss Plaintiff's Complaint in its entirety also under the Affidavit of Merit Statute, and for failing to provide answers to interrogatories.[1]

For the following reasons, the Court will grant Defendants' motions in part.

---

[1] Defendants additionally include Devon Brown, Charles Leone, Ronald Cathel and Roy Hendricks (collectively "State Defendants").  Pursuant to an Order issued by Judge Joel B. Rosen, U.S. Magistrate Judge, on December 20, 2004, the State Defendants are required to answer, move, or otherwise respond to Plaintiff's Complaint no later than 30 days after the issuance of an Order regarding the determination of class certification in <u>Bennett v. Spectrum Healthcare Services, Inc.</u>, Civil No. 02-4993 (FLW).  That putative class action was administratively terminated on July 2, 2004 but restored to the docket on April 24, 2006.  A motion for class certification was filed on May 15, 2006, though no determination as to that issue has yet been made. The State Defendants have yet to answer or otherwise respond to Plaintiff's Complaint.

**I.   BACKGROUND**

The facts which bear upon the pending motions are contained in Plaintiff's well-pleaded complaint which, for present purposes, the Court must accept as true.[2]

Plaintiff Jose Lopez has been incarcerated in New Jersey since 1983. From that time until 1996, Plaintiff was incarcerated at Trenton State Prison; from 1996 through 1998, at Southern Prison; for a portion on 1998 at Riverfront Prison; and since late 1998 at Bayside Prison. (Compl. ¶¶ 42-46.) In May 2002, Plaintiff visited the prison infirmary with a heavy nosebleed. Plaintiff was rushed to a nearby hospital but released without being given an explanation for the cause of his condition.

According to Plaintiff, on July 2, 2002 he entered a "health class" at the prison in an attempt to understand why he had been bleeding. Subsequently, Plaintiff asked Genevieve Cunningham, the health counselor conducting the class, to obtain Plaintiff's

---

[2] Though Defendants Correctional Medical Services, Inc., William Andrade, James J. Neal, James Ruman, Rock Welch and Abu Ahsan have captioned their motion as one for partial summary judgment, citing Plaintiff's failure to deliver a proper affidavit within the statutory time period, such failure is considered tantamount to failing to state a cause of action upon which relief can be granted and, thus, is properly analyzed under Rule 12(b)(6), Fed. R. Civ. P. See Ferreira v. Rancocas Orthopedic Assocs., 178 N.J. 144, 146-47 (2003). Accordingly, the Court will look to the face of the complaint and decide whether, taking all of the allegations of fact as true and construing them in a light most favorable to the nonmovant, Plaintiff's allegations state a legal claim. Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990).

medical records.  (Id. at ¶¶ 51-53.)  On July 23, 2002, Ms. Cunningham provided Plaintiff with his medical records, revealing that he was HVB and HVC positive.  According to his medical records, Plaintiff tested positive for HVC in 1992 and for HVB in 1985.  (Id. at ¶¶ 54-56.)  Plaintiff alleges that he tested positive for HVC in 1992 while being treated for seizures at St. Francis Medical Center.  During this same time, tests also revealed that Plaintiff's liver enzymes were elevated, an indication of HVC.  Plaintiff claims, however, that these test results were not disclosed to him until 2002.  (Id. at ¶¶ 57-59.)

After Plaintiff learned of his condition in July 2002, he began receiving medication towards the end of that year.  According to Plaintiff, though, the medication was not effective and, thus, his doctors discontinued his prescription around March 2003.  Plaintiff alleges that he currently is not receiving any treatment for HVC or HVB.  (Id. at ¶¶ 60-62.)

Plaintiff filed this Complaint, through counsel, on May 7, 2004, asserting claims for damages and injunctive relief under 42 U.S.C. §§ 1983 and 1988, 42 U.S.C. § 1231 et seq., as well as New Jersey common law.[3]  These motions followed after prolonged discovery.

---

[3] St. Francis answered the Complaint on June 15, 2004. Defendants Correctional Medical Services, Inc., William Andrade, James J. Neal, James Ruman, Rock Welch and Abu Ahsan filed their answers, each of which contained an explicit demand for an affidavit of merit, on December 6, 2004.

**II.  DISCUSSION**

    A.   <u>Affidavit of Merit Requirement</u>

New Jersey's Affidavit of Merit Statute, N.J.S.A. 2A:53A-27, provides, in pertinent part:

> In any action for damages for personal injuries, wrongful death or property damage resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation, the plaintiff shall, within 60 days following the date of filing of the answer to the complaint by the defendant, provide each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices. The court may grant no more than one additional period, not to exceed 60 days, to file the affidavit pursuant to this section, upon a finding of good cause.

"The Legislature enacted the statute with the laudatory purpose of weeding out frivolous lawsuits early in the process." <u>Ferreira v. Rancocas Orthopedic Assocs.</u>, 178 N.J. 144, 146 (2003).  The statute additionally serves the dual purpose of "ensuring that plaintiffs with meritorious claims will have their day in court."  <u>Id.</u> at 151 (quoting <u>Hubbard v. Reed</u>, 168 N.J. 387, 395 (2001)).  The New Jersey Affidavit of Merit statute applies to medical malpractice claims asserted in federal court pursuant to diversity jurisdiction, <u>Chamberlain v. Giampapa</u>, 210 F.3d 154, 157 (3d Cir. 2000), and there is no reason why this requirement would not likewise apply to professional negligence claims arising under New Jersey law within the supplemental

5

jurisdiction of this Court under 28 U.S.C. § 1367.[4]

The statute imposes a set of conditions precedent to maintaining a malpractice action under New Jersey law: (1) that the plaintiff obtain an affidavit from an appropriate, licensed expert attesting to the "reasonable probability" of professional negligence; and (2) that the plaintiff provide the defendant with the affidavit withing sixty days of the filing of the answer or, for good cause shown, within an additional sixty day period. Ferreira, 178 N.J. at 149-50 (citing N.J.S.A. 2A:53A-27). Failure to deliver a proper affidavit within the statutory time period is generally considered tantamount to failing to state a cause of action and, therefore, typically mandates dismissal of the complaint with prejudice. Ferreira, 178 N.J. at 146-47 (citing Alan J. Cornblatt, P.A. v. Barow, 153 N.J. 218, 242 (1998)).

Notwithstanding the above, a complaint will not be dismissed if the plaintiff can show "substantial compliance" with the statute. The doctrine of substantial compliance requires the plaintiff to show:

---

[4] This Court has jurisdiction over Plaintiff's federal law claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3), and diversity jurisdiction exists under 28 U.S.C. § 1332 as to Plaintiff's New Jersey common law claims against the movants CMS, Andrade, Neal, Ruman, Welch and Ahsan, each of whom is a citizen of Missouri, and supplemental jurisdiction under 28 U.S.C. § 1367 as to Plaintiff's New Jersey common law claims against St. Francis Hospital, a New Jersey institution.

> (1) the lack of prejudice to the defending party; (2) a series of steps taken to comply with the statute involved; (3) a general compliance with the purpose of the statute; (4) a reasonable notice of petitioner's claim; and (5) a reasonable explanation why there was not strict compliance with the statute.

Ferreira, 178 N.J. at 151 (quoting Galik v. Clara Maass Med. Ctr., 167 N.J. 387, 395 (2001)).  Additionally, a complaint will be dismissed without prejudice when "extraordinary circumstances" exist to explain non-compliance.  Ferreira, 178 N.J. at 146-47 (citing Palanque v. Lambert-Woolley, 168 N.J. 398, 404-05 (2001)).  It is well-settled that attorney non-compliance does not present such a circumstance.  Ferreira, 178 N.J. at 146-47 (citing Palanque, 168 N.J. at 405).

This action was filed on May 7, 2004.  To date, Plaintiff has not filed an affidavit of merit as required by N.J.S.A. 2A:53A-27.  Plaintiff acknowledges that the doctrine of substantial compliance is inapplicable.  Moreover, to the extent that Plaintiff's counsel faults himself for failing to comply with the statute, as already explained supra, it is well-settled that attorney non-compliance does not qualify as an "extraordinary circumstance" warranting leniency from the rule.  See Ferreira, 178 N.J. at 146-47 (citing Palanque, 168 N.J. at 405).  Therefore, the Court holds that the above exceptions are not applicable here.

Plaintiff initially argues that he should be granted leave to file an affidavit of merit out of time considering the

7

procedural posture of the case; as mentioned above, pursuant to an Order issued by Judge Rosen on December 20, 2004, the State Defendants are not required to answer, move, or otherwise respond to Plaintiff's Complaint until a determination of class certification in <u>Bennett v. Spectrum Healthcare Services, Inc.</u>, Civil No. 02-4993 (FLW) has been made. To date, though, that determination has not been made. Without citing any authority, Plaintiff argues that "this Court's stay of this action as to the State Defendants, and the fact that an Answer has not yet been filed by the State Defendants, constitute 'extraordinary circumstances.'" (Pl. Opp. Br. at 9.)

In the first instance, as already noted, even were the Court to accept Plaintiff's argument, the proper remedy would be to dismiss the complaint without prejudice, <u>see</u> <u>Ferreira</u>, 178 N.J. at 146-47, not to allow Plaintiff to file an affidavit out of time. In any event, the Court is not aware of any authority suggesting that the failure by some defendants to answer a complaint constitutes extraordinary circumstances warranting that the plaintiff be excused from the statutory requirements of N.J.S.A. 2A:53A-27 as to the defendants who have answered. <u>See</u> <u>Kubiak v. Robert Wood Johnson Hospital</u>, 332 N.J. Super. 230, 237 (App. Div. 2000) (the statute requires the affidavit to be filed within sixty days of the answer being filed by each particular defendant).

8

Plaintiff additionally argues that an affidavit of merit is not required under the "common knowledge exception" to the statute. See Jackson v. Fauver, 334 F. Supp. 2d 697, 743 (D.N.J. 2004) (citing Natale v. Camden County Corr. Facility, 318 F.3d 575, 580 (3d Cir. 2003)). That exception applies where "the threshold of merit should be readily apparent from a reading of the plaintiff's complaint," and where "an expert is no more qualified to attest to the merits of a plaintiff's claim than a non-expert." Fauver, 334 F. Supp. 2d at 743 (quoting Hubbard, 168 N.J. at 395).

Thus, for example, the district court in Fauver found the common knowledge exception applicable where the defendants failed to timely provide a plaintiff's radiation oncologist with critical test results that he had specifically requested, and failed to timely provide the plaintiffs with medicines which had been prescribed. 334 F. Supp. 2d at 743. The court there held that "[a] reasonable jury would not need the assistance of an expert to conclude that [the defendant's] personnel were negligent when they allegedly failed to provide these plaintiffs with medical care prescribed for them by their treating specialists and to follow the medical instructions of these specialists." Id. The court therefore applied the common knowledge exception to excuse the plaintiff's failure under

N.J.S.A. 2A:53A-27.[5]

Here, for the following reasons, the Court finds that the exception applies only to certain of Plaintiff's common law claims. Specifically, to the extent that Plaintiff's common law claims are based on Defendants' failure to properly screen for and diagnose his condition, the Court holds that common sense would not necessarily indicate negligence to a reasonable layperson, and thus an Affidavit of Merit is required regarding the failure to properly screen and diagnose. On the other hand, the Court finds that common sense would dictate, as in <u>Fauver</u>, that the failure to disclose to the patient the existence of and treat a known condition does not require expert testimony to prove negligence. The Court will discuss each in turn.

First, Plaintiff alleges in the Complaint that Defendants were negligent in failing to implement "adequate plans for screening, counseling, evaluation, and treatment of HCV infected inmates, including the Plaintiff . . . ." (Compl. ¶ 64.) Thus, for example, Plaintiff alleges that Defendants were negligent for failing to confirm the presence of HCV even though since 1992 his "liver enzymes were consistently elevated, a clear indication of

---

[5] Additionally, the <u>Fauver</u> court relied on the fact that the lawsuit was not "early in the process," and that "the relevant medical malpractice/negligence claims are strong enough to survive motions for summary judgment . . . ." 334 F. Supp. 2d at 744. This Court is unable at this stage of the litigation to determine if those same considerations are present.

10

Hepatitis C." (Compl. ¶¶ 59, 65.) The Court is skeptical that a layperson would be aware of the correlation between elevated liver enzymes and HVC, let alone that elevated liver enzymes are pathognomonic for HVC to the exclusion of other conditions. Rather, expert testimony would be required to explain this relationship and support the claim that Defendants' failure to recognize it as a sign of HVC was negligent.

Moreover, as the Third Circuit counseled in <u>Montgomery v. Pinchak</u>, 294 F.3d 492, 504 (3d Cir. 2002), where a plaintiff lacks the ability to explain the medical consequences of a certain course of treatment, expert medical testimony is needed to prove a claim based on a resulting medical injury. Such proofs are needed here where, as Mr. Lopez himself has admitted, the plaintiff is unable to read his medical records. (<u>See</u> Supp. Chewning Aff. Ex. D, Pl. Dep. Tr. at 67:22-68:3.) For the above reasons, the Court holds that Plaintiff's failure to submit an affidavit of merit requires dismissal of his common law claims relating to Defendants' failure to properly screen, evaluate and identify Plaintiff's condition at an earlier date.

Second, Plaintiff claims that despite knowing of his condition in 1992, Defendants concealed that information from him and did not provide treatment until the end of 2002. Moreover, the Complaint alleges that after 2002, because his treatment was not effective, Defendants discontinued treatment altogether in

11

March or April, 2003.  (Compl. ¶¶ 58-62.)  As in <u>Fauver</u>, 334 F. Supp. 2d 697, the Court here is persuaded that common knowledge is sufficient to determine that Defendants' failure to make known or attempt to treat a serious medical condition of which they were aware constitutes negligence.[6]  If such facts are shown, the jury could well find one or more defendants failed in the fundamental duty to tell the patient about his own life-threatening condition and to develop a suitable treatment plan. Accordingly, the Court holds that the common knowledge exception to the affidavit of merit requirement applies to those claims relating to the failure to disclose or treat a known serious medical condition.[7]

---

[6] Additionally, it is worth noting that application of the technical requirements of the statute to these common law claims will not in any event help "weed[] out frivolous lawsuits early in the process" as was intended by the Legislature in passing N.J.S.A. 2A:53A-27.  <u>Fauver</u>, 334 F. Supp. 2d at 744 (quoting <u>Ferreira</u>, 178 N.J. at 146).  This case has now been pending for approximately two years, during which time extensive fact discovery has taken place.

[7] To the extent that Defendant CMS alleges that negligence claims arising before April 27, 1996 must be dismissed because its contract with the State of New Jersey did not commence until that date, (<u>see</u> Def. Reply Br. at 5,) the Court is not prepared to make that factual determination at this time.  Instead, in adjudging whether an affidavit of merit is required to prove Plaintiff's negligence claims, the Court will look only to the face of the Complaint.  Additionally, as CMS raised this issue for the first time in its Reply Brief, Plaintiff has not had a meaningful opportunity to respond.
   Of course, if CMS is able to demonstrate, for example, that its contract with the State of New Jersey commenced on April 27, 1996, the Court at that time can evaluate on the merits whether summary judgment in favor of CMS is appropriate for claims predating the contract.

B.   <u>Failure to Answer Interrogatories</u>

Defendant St. Francis Medical Center also seeks dismissal under Rule 37(b)(2), Fed. R. Civ. P., for Plaintiff's failure to answer interrogatories.  Defendant argues that because of Plaintiff's failure to provide this discovery, it "has no idea what the specific allegations of deliberate indifferences [sic] are against the hospital."  (Def. Br. at 12.)  Plaintiff responds that the answers Plaintiff provided to the CMS Defendants' comprehensive interrogatories, a copy of which was provided to St. Francis Medical Center, were sufficiently responsive to the requests by St. Francis.  (Pl. Opp. Br. at 11.)

The parties agree that Court must consider the following factors in deciding whether to dismiss the Complaint for failure to answer interrogatories:

> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

<u>Poulis v. State Farm Fire & Cas. Co.</u>, 747 F.2d 863, 868 (3d Cir. 1984) (emphasis in original omitted).  Here, all factors point against dismissal.  St. Francis Medical Center's only weighty argument in favor of dismissal pertains to the second factor; specifically, that Defendant is prejudiced by Plaintiff's failure

13

because it "has no idea what the specific allegations of deliberate indifferences [sic] are against the hospital."[8] (Def. Br. at 12.)  First, Plaintiff has provided to Defendant certain discovery, including copies of its answers to the CMS Defendants' interrogatories.  (See Pl. Ex. B.)  In any event, from the face of the Complaint it should be clear to Defendant that Plaintiff's claims are based on Plaintiff's having been treated in St. Francis Medical Center in 1992, and the subsequent failure by the treating physicians at that hospital to disclose test results confirming Plaintiff's HVC status.  Accordingly, the Court will not dismiss Plaintiff's Complaint under Rule 37(b)(2), but will instead enter an Order compelling Plaintiff to serve responsive answers to St. Francis Medical Center's interrogatories within twenty (20) days.

**IV. CONCLUSION**

For the foregoing reasons, the Court will grant Defendants' motions as they pertain to claims based on Defendants' failure to properly screen, evaluate and identify Plaintiff's condition. However, the Court will deny Defendants' motions to the extent the Complaint asserts claims for negligence based upon the failure to disclose to Plaintiff or treat Plaintiff's known

---

[8] Defendant also asserts that Plaintiff's claims against St. Francis Medical Center lack merit because St. Francis "merely is the physical building where he received medical care." (Def. Br. at 13.)

14

serious medical condition.  Finally, Plaintiff will be compelled to serve responsive answers to St. Francis Medical Center's interrogatories within twenty (20) days.  An appropriate Order will be entered.

**June 20, 2006**               **s/ Jerome B. Simandle**
Date                            JEROME B. SIMANDLE
                                U.S. District Judge